UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BRIAN M. ZAMBITO,

                              Plaintiff,

- vs -

PATRICK PONTIAC, INC., NATIONAL AUTO
CARE CORPORATION and CANANDAIGUA
NATIONAL BANK & TRUST COMPANY, N.A.,

                              Defendants.

**NOTICE OF REMOVAL**

Civil Action No.
_____

TO THE ABOVE NAMED PLAINTIFF:

      PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1331, 1367, 1441(b) and 1446(a), defendant National Auto Care Corporation ("National Auto") by its attorneys, Nixon Peabody LLP, hereby removes the above-captioned action from the State of New York Supreme Court, County of Monroe, to the United States District Court for the Western District of New York on the following grounds:

      1.     On January 18, 2007, an action (the "State Court Action") was commenced against National Auto Care Corporation by the filing of a Summons With Notice in the Supreme Court of the State of New York, Monroe County, bearing Index No. 07/000765, a copy of which is annexed hereto as Exhibit A.

      2.     A copy of the actual Complaint was received from the plaintiff on behalf of National Auto Care Corporation on April 16, 2007, a copy of which is annexed hereto as Exhibit B. Less than thirty days has elapsed since the defendant was served with the Complaint. Therefore, this Notice of Removal is being filed in a timely manner pursuant to 28 U.S.C. § 1446(b).

3. A review of the Monroe County Clerk's Office file reveals that the only documents on file with the Clerk's Office are (a) the Summons With Notice; and (b) the Complaint. Accordingly, as is required by Local Rule 81(a)(3)(A), attached as Exhibit C is an Index of all documents contained in the Monroe County Supreme Court file. No further proceedings have taken place in the State Court Action.

4. The Complaint alleges that the defendants violated the plaintiff's rights under United States federal law. Specifically, the plaintiff's First and Third Causes of Action are brought pursuant to the Truth In Lending Act, 15 U.S.C. § 1601 *et seq.*

5. This action is therefore removable to this Court pursuant to 28 U.S.C. §§ 1331 and 1441(b) because this Court has original jurisdiction over the above-referenced claims.

6. This Court also has supplemental jurisdiction over the state law claims and causes of action pursuant to 28 U.S.C. § 1367.

7. This also certifies that all other parties in the action have been provided with a copy of the Notice of Removal and attachments filed herein.

## JURY DEMAND

8. Pursuant to Rules 38 and 81 of the Federal Rules of Civil Procedure, the defendant requests a TRIAL BY JURY of all matters and claims in the Complaint to which it may be entitled.

WHEREFORE, the defendant hereby removes this action from the State of New York Supreme Court, County of Monroe, to the United States District Court for the Western District of New York.

DATED: Buffalo, New York
May 9, 2007

                                                       NIXON PEABODY LLP

                                                       /s/ Mark A. Molloy
By _____
           Mark A. Molloy, Esq.
*Attorneys for Defendant National Auto Care Corporation*
Key Towers at Fountain Plaza
40 Fountain Plaza, Suite 500
Buffalo, New York 14202
Telephone: (716) 853-8100
e-mail: mmolloy@nixonpeabody.com

TO: Richard G. Vogt, Esq.
RICHARD G. VOGT, P.C.
*Attorneys for Plaintiff*
228 Plymouth Avenue South
Rochester, New York 14608
Telephone: (585) 232-7660

CC: Rayne Hammond Benz, Esq.
HARRIS BEACH PLLC
*Attorneys for Defendant Patrick Pontiac, Inc.*
99 Garnsey Road
Pittsford, New York 14534
Telephone: (585) 419-8800

Eugene Welch, Esq.
HARRIS, CHESWORTH, O'BRIEN, JOHNSTONE, WELCH & LEONE, LLP
*Attorneys for Defendant Canandaigua National Bank*
300 Linden Oaks, Suite 100
Rochester, New York 14625
Telephone: (585) 899-1414

10558133.1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BRIAN M. ZAMBITO,

                                   Plaintiff,

- vs -

                                                             Civil Action No.

PATRICK PONTIAC, INC., NATIONAL AUTO
CARE CORPORATION and CANANDAIGUA
NATIONAL BANK & TRUST COMPANY, N.A.,

                                  Defendants.

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on the 9th day of May, 2007 a copy of the Notice of Removal was securely enclosed in a post paid wrapper in a Post Office Box regularly maintained by the United States Government at Buffalo, New York, in said County of Erie, directed to the following:

    Richard G. Vogt, Esq.
    RICHARD G. VOGT, P.C.
    *Attorneys for Plaintiff*
    228 Plymouth Avenue South
    Rochester, New York 14608

    Rayne Hammond Benz, Esq.
    HARRIS BEACH PLLC
    *Attorneys for Defendant Patrick Pontiac, Inc.*
    99 Garnsey Road
    Pittsford, New York 14534

    Eugene Welch, Esq.
    HARRIS, CHESWORTH, O'BRIEN, JOHNSTONE, WELCH & LEONE, LLP
    *Attorneys for Defendant Canandaigua National Bank*
    300 Linden Oaks, Suite 100
    Rochester, New York 14625

10558133.1

NIXON PEABODY LLP

By /s/ Mark A. Molloy
_____
    Mark A. Molloy, Esq.
*Attorneys for Defendant National Auto Care Corporation*
Key Towers at Fountain Plaza
40 Fountain Plaza, Suite 500
Buffalo, New York 14202
Telephone: (716) 853-8100
Email: mmolloy@nixonpeabody.com

# Exhibit "A"

STATE OF NEW YORK          COUNTY OF MONROE

BRIAN M. ZAMBITO, (ZAMITO)

Index No. 07/000765

Plaintiff designates Monroe
County as the place of trial
Date filed: 1/18/07

Plaintiff,

against

PATRICK PONTIAC, INC., NATIONAL AUTO CARE
CORPORATION, CANANDAIGUA NATIONAL BANK
& TRUST COMPANY, N.A.

The basis of the venue is
Plaintiff's residence

**SUMMONS WITH NOTICE**

Plaintiff resides at The City of
Rochester, County of Monroe

Defendants.

To the above named Defendant

**You are hereby summoned** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: January 18, 2007

Defendant's address:
Patrick Pontiac, Inc.
3600 W. Henrietta Road
Rochester, New York 14623

National Auto Care Corporation
575 Westar Crossing
Westerville, Ohio 43082

Canandaigua National Bank & Trust Company, N.A.
72 South Main Street
Canandaigua, New York 14424

ERIC J. VOGT
RICHARD G. VOGT, P.C.
Attorney(s) for Plaintiff
Office and Post Office Address
228 Plymouth Avenue South
Rochester, New York 14608

SERVICE 25

Notice: The object of this action is breach of contract, breach of express and implied warranty, fraud and misrepresentation, violations of TILA, 15 USC Sections 1601 et seq, New York General Business Law Sections 349 and 350.

The relief sought is general damages, statutory damages, punitive damages, declaratory and injunctive relief, putative class action.

Upon your failure to appear, judgment will be taken against you by default for the sum of $ 25,000 , with interest from OCTOBER 13 , 2003 and the costs of this action.

# Exhibit "B"

STATE OF NEW YORK
SUPREME COURT   COUNTY OF MONROE

BRIAN M. ZAMITO,                                    COMPLAINT

      Plaintiff,                       Index No.: 07/000765

  -vs-

PATRICK PONTIAC, INC., NATIONAL AUTO
CARE CORPORATION, and CANANDAIGUA
NATIONAL BANK & TRUST COMPANY, N.A.

---

  Plaintiff, Brian M. Zamito, by his attorneys, Richard G. Vogt, P.C., complaining of the defendants herein, alleges as follows:

  1. Plaintiff is a resident and citizen of the County of Monroe, State of New York.

  2. Upon information and belief, defendant Patrick Pontiac, Inc., (hereinafter "Patrick Pontiac") at all times material herein, was and is incorporated and organized under the laws of the State of New York, with principal offices at West Henrietta Road, Town of Henrietta, County of Monroe, State of New York.

  3. Upon information and belief, defendant National Auto Care Corporation (hereinafter "National Auto") is a corporation duly organized and existing under the laws of the State of Ohio, with principal offices in Columbus, Ohio, and among other things, is engaged in selling extended warranties on used vehicles. National Auto sells and services contracts to consumers through automobile dealers. In the instant case, National Auto acted as a principal and Patrick Pontiac as the agent in selling an extended warranty contract on the vehicle sold to the plaintiff on October 13, 2003. (Exhibit A.)

  4. Defendant Canandaigua National Bank & Trust Company, N.A. (hereinafter "Canandaigua Bank") is a banking institution organized under the laws of the State of New York,

with its principal office in the City of Canandaigua, County of Ontario and State of New York, that financed the above extended warranty contract.

## AS AND FOR A FIRST CAUSE OF ACTION ALLEGED AGAINST DEFENDANTS PATRICK PONTIAC AND NATIONAL AUTO:

5. The defendant Patrick Pontiac is and was in the business of selling and servicing new and used automobiles, and entered into an installment contract with the plaintiff on November 13, 2003 for the purchase of a 2000 Pontiac Grand Prix SE. with a new "balance to be financed" of $10,762.98, which amount included a charge of $1,772.05 "svc. cont." for the extended warranty contract of National Auto. (Exhibit A.)

6. On or about October 13, 2003, plaintiff made an inquiry to Canandaigua Bank concerning credit to purchase a used automobile for personal, family and household purposes.

7. On or about October 13, 2003, plaintiff executed a promissory note and security agreement for that purpose. This transaction is considered to be a consumer credit transaction within the meaning of TILA, the Truth in Lending Act, 15 USC Section 1601, et seq., and regulation 226.28. A copy of the note and security agreement is attached hereto as Exhibit B.

8. This security agreement lists as collateral the automobile purchased with the proceeds of this loan, to wit, a 2000 Pontiac Grand Prix.

9. On or about October 13, 2003, defendant Patrick Pontiac provided plaintiff with a copy of the truth in lending disclosure statement and an itemized schedule set forth as a retail installment contract, a copy of which is attached as Exhibit C.

10. The truth in lending disclosure statement provided by defendant Patrick Pontiac disclosed an amount financed to be $10,807.98 at an annual percentage rate of 7.49%, with a

finance charge of $1,511.80. The statement also provided for a security interest in the automobile purchased.

11. The following charge for the same service contract, among others, was included in the amount financed, namely, $10,807.98:   Item 7   $1,657.00 "National AO/DOC fee"

12. Upon information and belief, the disclosure statement issued in conjunction with this consumer credit transaction violated the requirements of the truth in lending act and regulations:

    a. By failing to provide the required disclosures prior to the consummation of the transaction in violation of 15 USC Section 1638(E) and regulation 226.17(E);

    b. By failing to make required disclosures clearly and conspicuously in writing, in violation of 15 USC Section 1632(a) and regulation z Section 226.17(a);

    c. By failing to make required disclosures as to Patrick Pontiac's retention of a substantial share of the National Auto service contract fee for the extended warranty in the amount of $1,772.05.

13. Both the aforesaid sale of the vehicle to the plaintiff, along with the extended warranty contract, were financed through a retail installment contract and was governed by the provisions of the Truth In Lending Act, 15 USC Section 101, et seq., (hereinafter known as TILA). According to the terms of the retail installment contract, (Exhibit A), the total amount of $1,772.05 charged to the plaintiff was to be paid to National Auto Care by the defendant Patrick Pontiac.

14. Upon information and belief, in truth, Patrick Pontiac did not pay to the defendant National Auto Care the full amount ($1,772.05) charged to the plaintiff, as per Exhibit A, but retained and kept, without knowledge of or disclosure to the plaintiff, a substantial portion of the

aforesaid premium for itself.

15. As defined in TILA, the transaction between the plaintiff and the defendant Patrick Pontiac was a "credit sale," and plaintiff was a "consumer", and accordingly, Patrick Pontiac was required to make certain specified disclosures to the plaintiff as to the true nature of the contract "before credit was extended."

16. Upon information and belief, Patrick Pontiac not only did not give the required disclosure notice to the plaintiff that it was retaining a portion of the cost of the National Auto extended warranty contract fee, but also in fact defrauded the plaintiff by holding out to the plaintiff that this was a fair cost of purchasing a similar service contract in the market place, when in fact a similar contract could have been purchased from other sources for much less money, and by keeping this knowledge from the plaintiff.

17. The failure to make the disclosures before the credit was extended in the aforesaid Exhibit A, was, upon information and belief, wilful and wrongful and calculated to induce plaintiff to purchase the aforesaid warranty contract, and plaintiff relied thereon. Such fraud and misrepresentations, as previously stated, could have been avoided if the required disclosures had been made to the plaintiff under TILA.

18. Defendants Patrick Pontiac and National Auto have violated TILA, 15 USC Section 1602, et seq.

> AS AND FOR A SECOND CAUSE OF ACTION ALLEGED AGAINST:
> DEFENDANTS PATRICK PONTIAC AND NATIONAL AUTO:

19. Plaintiff repeats and realleges Paragraphs "1" through "18" above with full force and effect as though fully restated herein.

20. Patrick Pontiac and its principal, National Auto, have violated Section 349 of the General Business Law of the State of New York by charging automobile buyers more than it expended or intended to expend on behalf of the plaintiff, and by such deceptive acts and practices have defrauded the plaintiff.

   AS AND FOR A THIRD CAUSE OF ACTION ALLEGED
   AGAINST DEFENDANT CANANDAIGUA BANK:

21. Plaintiff repeats and realleges Paragraphs "1" through "18" and Paragraph "20" above with full force and effect as though fully restated herein.

22. Canandaigua Bank was the assignee of the subject extended warranty installment contract National Auto contract financed by the plaintiff.

23. Plaintiff's aforesaid installment contract with defendant Patrick Pontiac contains the following notice, which is required by the Federal Trade Commission:

> NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS
> SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR
> COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES
> OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF.
> RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED
> AMOUNTS PAID BY THE DEBTOR HEREUNDER.

24. Consequently, under the Federal Trade commission notice, Canandaigua Bank, the holder of the installment contracts entered into by the plaintiff and other class members, is subject to all the claims and defenses that plaintiff and other class members can assert against the car dealer, who assigned its installment contract to defendant Canandaigua Bank.

25. As the holder of installment contracts entered into by plaintiff and other class members, Canandaigua Bank is liable to the same extent as defendant Patrick Pontiac for violating the provisions of TILA, 15 USC Section 1601, et seq., and Section 349 of the General

Business Law by directly or indirectly receiving a portion of the sale price of the National Auto extended warrant contracts.

### AS AND FOR A FOURTH CAUSE OF ACTION ALLEGED AGAINST DEFENDANTS PATRICK PONTIAC AND NATIONAL AUTO:

26. Plaintiff repeats and realleges Paragraphs "1" through "18", Paragraph "20", and Paragraphs "22" through "25" above with full force and effect as though fully restated herein.

27. The extended warranty service contract number 3791899 of the defendant National Auto sold by the defendant Patrick Pontiac on October 13, 2003 to the plaintiff provided that in the next 60 months/60,000 miles, any repairs necessary to the car would ultimately be paid by the defendant National Auto under the aforesaid contract.

28. Over the next couple of years, plaintiff had some minor repair work done on the subject vehicle by Patrick Pontiac, which was paid for under the National Auto service contract.

29. On January 19, 2006, because plaintiff was experiencing noise and a shudder in his transmission, he took the car into Patrick Pontiac for and repairs, pursuant to the extended service contract.

30. On the same date, he was told by a service representative of Patrick Pontiac that, although repair work needed to be done, Patrick Pontiac could not do the same under the service contract because of the clause in the contract that provided that "Change transmission fluid every 12 months or 12,000 miles on used vehicles and check axle fluid." (Exhibit C, p. 7.) Although the plaintiff signed the first page of an application for the National Auto extended warranty service contract on October 13, 2003 and paid for the same, (Exhibit D,) the actual contract containing the unconscionable clause pertaining to the requirement that the transmission fluid be

changed every 12,000 miles was not sent to the plaintiff, was not delivered to the plaintiff until sometime thereafter. (Exhibit C.) Nevertheless, the Patrick Pontiac serviceman said that he had checked with National Auto, and National Auto refused to do the transmission repair work under the extended warranty because the plaintiff could not verify that he had in fact changed the transmission fluid every 12 months or 12,000 miles on the vehicle since the inception of the contract on October 13, 2003.

31. Thereafter, plaintiff received a second opinion from another source, and was told that the problem with his car was not the transmission, but a bad torque converter.

32. Plaintiff took the subject vehicle to a third repair shop, Empire Transmission and Auto Service, Inc., and was also told that the problem was a bad torque converter.

33. Plaintiff called Patrick Pontiac, and spoke again to the same service repairman, who said it was not a torque converter problem, but a transmission problem that was not covered under the service contract because of the exclusionary clause above requiring that the transmission fluid be changed every 12,000 miles.

34. Plaintiff was compelled to have the work done at Empire Transmission and Auto Service, Inc., with a total repair cost of $1,795.06.

35. The aforementioned service contract of National Auto clause that excludes transmission work unless the vehicle owner can prove that he changed the transmission fluid every 12,000 miles is not a standard in the automotive field, (wherein the standard and accepted requirement is that the transmission fluid be changed every 100,000 miles), is unconscionable, is a deceptive practice, and an unreasonable trap, demonstrating the bad faith on the part of National Auto and its agent, Patrick Pontiac, all in violation of Section 349 of the General

Business Law.

36. This is a Class Action under the provisions of Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure. The class is composed of the named plaintiff and all others who have consummated consumer-credit transactions and extended service warranty contracts with the defendants since October 13, 2003. The rights that the plaintiff seeks to enforce for himself and other members of the class are several, but common questions of law and fact affect the several rights. The claims of the plaintiff are typical of the claims of the class. All of the members of this class have a right to damages which readily may be computed in each case by doubling the amount of the finance charge appearing on the face of the disclosure statements and other documents used by the defendant. The common relief sought will be effective and appropriate for the entire class. Other members of the class are so numerous as to make it impracticable to bring them all before the court. The identity of each individual member of this class can only be ascertained from the books and records maintained by the defendants. Appearance of the plaintiff will fairly insure the adequate representation of all members of the class and protect their interests. Proof of the common questions of law and fact will be dispositive of the right of each class member to recover damages and penalties.

Because many of the persons with whom defendants have dealt may not be aware of their rights against defendants, or are not in a financial position to assert such rights, and because relegation of their claims to individual actions would result in unreasonable multiplicity of suits and a corresponding burden on the court, a class action is far superior to all other methods for fairly and efficiently adjudicating this controversy.

WHEREFORE, plaintiff demands judgment against the defendants for:

1) General and punitive damages from defendants in the amount of $1,000,000.00;

2) Reasonable attorneys' fees and costs;

3) Any further relief which the court deems just and proper.

                                              Richard G. Vogt, Esq.
                                              Richard G. Vogt, P.C.
                                              Attorneys for Plaintiff
                                              228 Plymouth Avenue South
                                              Rochester, New York 14608
                                              Telephone: (585)232-7660

To: Rayne Hammond Benz, Esq.
    Harris Beach PLLC
    Attorneys for Defendant Patrick Pontiac, Inc.
    99 Garnsey Road
    Pittsford, New York 14534
    Telephone: (585)419-8800

    Mark A. Molloy, Esq.
    Nixon Peabody LLP
    Attorneys for Defendant National Auto Care Corporation
    40 Fountain Plaza, Suite 500
    Buffalo, New York 14202
    Telephone: (716)853-8100

    Eugene Welch, Esq.
    Harris, Chesworth, O'Brien, Johnstone, Welch & Leone, LLP
    Attorneys for Defendant Canandaigua National Bank
    300 Linden Oaks, suite 100
    Rochester, New York 14625
    Telephone: (585)899-1414

    

NEW YORK STATE
REGISTRATION NO. R7030611

3600 West Henrietta Road • Rochester, New York 14623
(585) 359-2200 • Fax (585) 334-6361 • www.patrickautodeals.com

Page 1

**THIS AGREEMENT IS NOT BINDING UNLESS SIGNED BY THE SELLER AND THE BUYER**

BUYER: BRIAN M ZAMITO    DATE 10/13/2003    BIRTHDATE 10/30/1981
STREET: 3639 MEADOWBROOK ACR    CITY N TONAWANDA    STATE NY    ZIP 14120
HOME PHONE: (716)694-6410    BUSINESS PHONE:    SALESPERSON GARRY G SEROSYAN
E-MAIL: BMZ9938@HOTMAIL.COM    CELL    PAGER    FAX

### TRANSACTION

I ORDER AND AGREE TO PURCHASE FROM YOU, BASED UPON THE TERMS SPECIFIED ON BOTH SIDES OF THIS AGREEMENT, THE FOLLOWING VEHICLE.

PLEASE READ REVERSE SIDE OF THIS AGREEMENT

| NEW/USED/DEMO/RENTAL | YEAR | MAKE | MODEL | BODY | COLOR | MILEAGE | VIN # | STOCK NO. |
|---|---|---|---|---|---|---|---|---|
| X USED | 2000 | PONTIAC | GRAND PRIX | 4D SD | BR | 39189 | 1G2WK52J8YF333731 | 904943 |

**VEHICLE WORK SHEET**

LIST OF OPTIONS:    M.S.R.P.    10990.00

**SUMMARY OF PURCHASE**

| | | |
|---|---|---|
| TOTAL LIST PRICE | (+) $ | 9890.00 |
| (I have read 1 and 5b on the back ___) | | |
| LESS TRADE-IN CREDIT OR DISCOUNT | (-) $ | N/A |
| NET TAXABLE PRICE | $ | 9890.00 |
| SALES TAX - COUNTY NIAGARA % 8.25 | (+) $ | 815.93 |
| "DEALER'S OPTIONAL FEE FOR PROCESSING APPLICATION FOR REGISTRATION AND/OR CERTIFICATE OF TITLE" * | (+) $ | 20.00 |
| LICENSE, TITLE, REGISTRATION (ESTIMATE) | (+) $ | 46.00 |
| INSPECTION FEE  * NYS WTM FEE | (+) $ | 19.00 |
| TOTAL CASH PRICE | $ | 10790.93 |
| | $ | N/A |
| SVC CONT. 60/60000 $1637.00 135.05 | (+) $ | 1772.05 |
| TOTAL CASH PRICE DELIVERED | $ | 12562.98 |
| LESS CASH DEPOSIT WITH ORDER | (-) $ | 200.00 |
| PLUS BALANCE OWING ON TRADE-IN | (+) $ | N/A |
| REBATES | (-) $ | N/A |
| CASH ON DELIVERY | $ | 1600.00 |
| (No. of Months 42) L/s A.H. | | |
| BALANCE TO BE FINANCED | $ | 10762.98 |

PAYMENTS ASSUME BEST CREDIT RATING

Lease Payment $ ___    $ 10990.00
Term ___ Miles per year ___    * ESTIMATE ONLY BELOW
1st Payment ___ Security Deposit ___    * PAYMENT - $ 293.33
Tax ___ Cap Reduction ___    * CASHDOWN - $1000.00
Cap Reduction tax ___ ACQ Fee ___    * PAYOFF - $ N/A
License Fees ___ TOTAL DUE ___
Disposition Fee ___
REBATE SUBJECT TO MFG DEL. DATE

"PRIOR USE CERTIFICATION (REQUIRED BY VEHICLE AND TRAFFIC LAW 417-a) IF THE PRINCIPLE PRIOR USE OF THE VEHICLE WERE AS A POLICE VEHICLE, TAXICAB OR DRIVER EDUCATION VEHICLE." THE PRINCIPLE PRIOR USE OF THIS VEHICLE WAS AS A RENTAL VEHICLE." ☐ YES ☐ NO

SIGNATURE ___

** THE DEALER APPLICATION PROCESSING FEE IS NOT A NEW YORK STATE OR DEPARTMENT OF MOTOR VEHICLES FEE. UNLESS A LIEN IS BEING RECORDED OR THE DEALER ISSUED NUMBER PLATES, YOU MAY AVOID THIS FEE BY SUBMITTING YOUR OWN APPLICATION FOR REGISTRATION AND/OR CERTIFICATE OF TITLE TO ANY MOTOR VEHICLE ISSUING OFFICE."

"NOTICE TO CONSUMER: IF THE VEHICLE IS NOT DELIVERED IN ACCORDANCE WITH THIS AGREEMENT WITHIN 30 DAYS AFTER THE ESTIMATED DELIVERY DATE AND THE DELAY IS NOT ATTRIBUTABLE TO YOU, YOU HAVE THE RIGHT TO CANCEL THIS AGREEMENT AND TO RECEIVE A FULL REFUND OF YOUR DEPOSIT."

"IF THIS MOTOR VEHICLE IS CLASSIFIED AS A USED MOTOR VEHICLE, PATRICK PONTIAC JEEP AND GMC CERTIFIES THAT THE ENTIRE VEHICLE IS IN CONDITION AND REPAIR TO RENDER UNDER NORMAL USE SATISFACTORY AND ADEQUATE SERVICE UPON THE PUBLIC HIGHWAY AT THE TIME OF DELIVERY."

IF YOU AGREE TO ASSIST ME IN OBTAINING FINANCING FOR ANY PART OF THE PURCHASE PRICE, THIS ORDER SHALL NOT BE BINDING UPON YOU OR ME UNTIL ALL OF THE CREDIT TERMS ARE PRESENTED TO ME IN ACCORDANCE WITH REGULATION "Z" (TRUTH-IN LENDING) AND ARE ACCEPTED BY ME. IF I DO NOT ACCEPT THE CREDIT TERMS WHEN PRESENTED I MAY CANCEL THIS ORDER AND MY DEPOSIT WILL BE REFUNDED.

**SPECIAL NOTICE TO CONSUMER**

IF, UNDER THE LAW OF THE STATE OF NEW YORK CONTROLLING THE SALE OF USED MOTOR VEHICLES, YOU SHOULD BE ENTITLED TO A REFUND IN CONNECTION WITH THIS TRANSACTION, THE VALUE OF ANY VEHICLE YOU MAY HAVE TRADED-IN (IF THE SELLER CHOOSES NOT TO RETURN IT TO YOU) SHALL NOT BE THE VALUE LISTED IN THIS DOCUMENT. INSTEAD, THE VALUE WILL BE DETERMINED BASED ON THE NATIONAL AUTO DEALERS ASSOCIATION USED CAR GUIDE WHOLESALE VALUE OR OTHER GUIDE APPROVED BY THE COMMISSIONER OF MOTOR VEHICLES, AND ADJUSTED FOR MILEAGE, IMPROVEMENTS AND ANY MAJOR PHYSICAL OR MECHANICAL DEFECTS.

**CONTRACTUAL DISCLOSURE STATEMENT FOR USED VEHICLE ONLY**
"THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE."

THE TRADE IN:

BANK ADDRESS:
LIEN ACCT #
GOOD UNTIL    VERIFIED BY    CLOSE OUT    DATE

I HEREBY STATE THAT THERE ARE NO LIENS OR ENCUMBRANCES ON THE VEHICLE THAT I AM TRADING, OTHER THAN THOSE STATED ABOVE.

DATE 10/13/2003    BUYER'S SIGNATURE ___

ESTIMATED DELIVERY DATE 10/13/2003    TIME ___    DELIVERY LOCATION PATRICK PONTIAC

I HAVE READ THE TERMS ON THIS AGREEMENT AND ACCEPT THEM AS STATED

BUYER'S SIGNATURE  *Brian M Zamito*    DATE 10/13/2003
CO-BUYER'S SIGNATURE ___    DATE 10/13/2003
APPROVED BY SELLER ___    DATE 10/13/2003

SEE OTHER SIDE FOR ADDITIONAL TERMS

CUSTOMER

EX A

## ADDITIONAL TERMS OF AGREEMENT

"I", "me", and "my" refer to the Buyer and Co-Buyer. "You" and "your" refer to the Seller.

I agree this order is subject to the following terms:

1. **Trade-In Credit May Change.** If I do not deliver the trade-in vehicle to you when this Agreement is signed, I agree that at the time the trade-in vehicle is delivered to you, should the value of my trade-in be materially diminished as a result of physical damage, alteration or deterioration in mechanical condition other than normal wear and tear, YOU HAVE THE RIGHT TO REAPPRAISE THE VEHICLE. AS A RESULT OF SUCH REAPPRAISAL, I UNDERSTAND THAT THE TRADE-IN ALLOWANCE ON MY VEHICLE MAY BE REDUCED AND THAT THIS WILL IN TURN INCREASE THE NET PRICE WHICH I WILL HAVE TO PAY FOR THE VEHICLE IF I DECIDE TO PURCHASE THE VEHICLE. If the trade-in credit is reduced and I am not satisfied, I understand that I can cancel this agreement IF the purchased vehicle has not been registered in my name or delivered to me or you have not accepted delivery of the trade-in vehicle.

2. **Trade-In Buyer's Obligations.** At the time I deliver the trade-in vehicle to you, I promise to sign a Bill of Sale and a mileage certification statement and give you satisfactory proof that I own the vehicle. I warrant (guarantee) (a) that there are no liens on the trade-in vehicle and that I owe no one any money for the vehicle or repairs to the vehicle, except as may be shown on the face of this agreement; (b) that the trade-in vehicle does not have a welded or bent frame and that the motor block is not cracked, welded or repaired; and (c) that the vehicle has not been flood damaged or declared a total loss for insurance purposes; and (d) that emission control devices have not been altered and/or removed, and nothing has been removed from the trade-in including all seat belts, that was originally sent. The engine and/or transmission has not been tampered with to pass your inspection.

3. **Buyer's Refusal to Purchase.** Unless this agreement is non-binding because you are arranging credit for me, I understand that the cash deposit I have given to you can be retained, in accordance with your refund policy, to offset your damages if I refuse to complete my purchase. I also understand that I may be responsible for any other damages which you may incur as a result of my failure to perform my obligations under the terms of this agreement.

4. **Delays in Delivery.** I understand that you shall not be liable for delays caused by the manufacturer, accidents, sureties, fires or other causes beyond your control. Provided you promptly place my order with the manufacturer and the manufacturer refuses to accept the order or fails to deliver the vehicle after accepting the order, upon your prompt notification and refund of my deposit, I will not hold you liable and this agreement shall be cancelled.

5. **Disclaimer of Warranties.** I UNDERSTAND THAT YOU EXPRESSLY DISCLAIM ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND THAT YOU NEITHER ASSUME NOR AUTHORIZE ANY OTHER PERSON TO ASSUME FOR YOU ANY LIABILITY IN CONNECTION WITH THE SALE OF THE VEHICLE, except as otherwise provided in writing by YOU in an attachment to this Agreement or in a document delivered to ME when the vehicle is delivered.

**Limitation on Implied Warranties.** Some States do not allow either (1) Limitations on how long an implied warranty lasts or (2) the exclusion or limitation of incidental or consequential damages, so these limitations may not apply.

6. **Price Changes.**
(a) THE TOTAL CASH PRICE DELIVERED LESS THE TRADE-IN ALLOWANCE SHOWN ON THE FRONT OF THIS AGREEMENT IS THE FINAL CONTRACT PRICE TO WHICH YOU AND I HAVE AGREED AND IF THE VEHICLE IS A NEW MOTOR VEHICLE, NO ADDITIONAL FEE OR CHARGE WILL BE IMPOSED OR COLLECTED DUE TO CHANGES IN THE MANUFACTURER'S LIST PRICE, OR CHANGES IN THE COST OF FREIGHT OR SERVICES PROVIDED BY YOU.

(b) A REDUCTION IN THE VALUE OF THE TRADE-IN MAY RESULT IN AN INCREASE IN THE CASH PRICE DELIVERED I WILL HAVE TO PAY AS PROVIDED IN PARAGRAPH 1 OF THIS AGREEMENT.

(c) IF THE BALANCE I OWE ON MY TRADE-IN AT THE TIME OF DELIVERY OF THE TRADE-IN TO YOU IS DIFFERENT THAN THE AMOUNT I HAVE TOLD YOU AND WHICH AMOUNT IS SHOWN ON THE FRONT OF THIS AGREEMENT, THEN THE CASH PRICE DELIVERED OF THE VEHICLE I AM PURCHASING SHALL CHANGE ACCORDINGLY.

(d) IF THE REGISTRATION FEE VARIES FROM THE AMOUNT YOU HAVE ESTIMATED ON THE FRONT OF THIS AGREEMENT, THEN THIS CASH PRICE DELIVERED SHALL CHANGE ACCORDINGLY.

(e) I AGREE THAT I WILL PAY THE FINAL CASH PRICE DELIVERED AS SHOWN ON THE FRONT OF THIS AGREEMENT. IF THERE HAVE BEEN ANY CHANGES IN THE TOTAL CASH PRICE DELIVERED FOR REASONS STATED IN THIS PARAGRAPH 6 THEN I WILL PAY THE CASH PRICE DELIVERED AS CHANGED BY ANY SUCH ADJUSTMENT. MY PAYMENT WILL BE EITHER IN CASH, BANK OR CERTIFIED CHECK AT THE TIME OF DELIVERY OF THE VEHICLE I HAVE PURCHASED.

7. **Change of Design.** I understand that the manufacturer has the right to change the design of the vehicle, its chassis, accessories or any parts at any time without notice to YOU or ME. In the event of such a change by the manufacturer, YOU shall have no duty to ME except to deliver the vehicle as made by the manufacturer.

8. **No Other Agreements.** There are no understandings or agreements between you and me other than those set forth in this Agreement and attachments to this Agreement if there are any such attachments. IF THIS AGREEMENT IS FOR A USED VEHICLE, THE INFORMATION YOU SEE ON THE (FEDERAL TRADE COMMISSION) WINDOW FORM IS PART OF THIS AGREEMENT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

9. **New York Law Applies.** You and I agree that this Agreement is governed by New York State Law.

FROM :           FAX NO. :           May. 26 2006 12:27PM P2

May 25 06 04:07p   Sue Grishaber           585-242-4692       p.5

FORM NYS23SLC-25 (Rev. 9/03)

*Document 3, Page 1, Top*

## RETAIL INSTALMENT CONTRACT

Meaning Of Some Words: In this Contract, the words "I," "me," "we," and "my" mean anyone signing this Contract as Buyer. The words "you" and "your" mean the Seller or, after the Seller transfers its rights under this Contract, anyone having those rights.

| ANNUAL PERCENTAGE RATE<br>The cost of my credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost me. | Amount Financed<br>The amount of credit provided to me or on my behalf. | Total of Payments<br>The amount I will have paid after I have made all scheduled payments. | Total Sale Price<br>The total cost of my purchase on credit, including my downpayment of $ 1800.00 |
|---|---|---|---|---|
| 7.49 % | $ 1511.88 | $ 10807.98 | $ 12319.86 | $ 14119.86 |

My Payment Schedule will be:      e means estimate

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 42 | $ 293.33 | Monthly, beginning 11/13/2003 |
|  | N/A |  |

Security: I am giving a security interest in the motor vehicle being purchased.
Filing Fees: $ N/A     Non-Filing Insurance: $ N/A
Late Charge: If a payment is late more than 10 days, I will be charged 10% of the payment.
Prepayment: If I pay off early, I will not have to pay a penalty.

My Contract documents will have additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.

In this Contract,
you are   PATRICK PONTIAC, INC.
the Seller.   3680 W. HENRIETTA RD.   ROCHESTER NY 14623
     Name        Address        Zip Code

This Contract is between Seller and Buyer. All disclosures have been made by Seller. Seller intends to assign this Contract to the Assignee named below.

We are
the Buyer(s): BRIAN M ZAMITO   3639 MEADOWBROOK ACR N TONAWANDA NY 14120
     Name(s)        Address(es)        Zip Code(s)

If there is more than one Buyer, each of us will be obligated, separately and together, for all sums due you and the performance of all agreements as provided in this Contract.

Description of Vehicle: (See "Insurance Requirements" section)

| N/U | Year and Make | Series | Body Style | No. Cyl. | Truck Ton Capacity | Serial Number |
|---|---|---|---|---|---|---|
| USED | 2000 PONTIAC | GRAND PRIX | 4DSD | 6 |  | 1G2WK52J8YF333731 |

Equipped X A.T.   ☐ P.S.   ☐ AM-FM Radio   Other _____
with   ☐ A.C.   ☐ P.B.   ☐ P.W.

I have traded in
the following vehicle: _____
     Year and Make        Description

Property Insurance: I am required to obtain and maintain insurance on the Collateral, endorsed to protect you as loss-payee, BUT I MAY CHOOSE THE AGENT OR BROKER OF MY CHOICE.
TITLE HOLDER OF COLLATERAL BRIAN M ZAMITO    REGISTRANT: BRIAN M ZAMITO
PHYSICAL DAMAGE: Comprehensive $ 200.00   deductible. Collision $ 200.00   deductible.
INSURANCE COMPANY TRAVELERS INDEMNIT   Policy Number 945958051011   Effective Date: 10/13/2003
AGENT: Name JAMES P BRANIECKI AG   Address WILLIAMSVILLE NY   Telephone Number (716)633-7665

I guarantee that the required insurance coverage as shown in the "Insurance Requirements" section was obtained from the agent named above.
**Liability insurance coverage for bodily injury and property damage is not included or provided for in this Contract.**

Vendor's Single Interest Insurance: If this box is checked [X], you require Vendor's Single Interest Insurance. I may choose the person through whom Vendor's Single Interest Insurance is to be obtained. This insurance is for the sole protection of the Assignee and my interest is not covered. If obtained through you, the cost of such insurance is $ 45.00

Promise to Pay: I promise to pay you (the "Assignee"), the Total Sale Price for the Vehicle by making the cash downpayment, assigning the Trade-In, if shown above, on or before the date of this Contract, and paying you the Amount Financed, plus the credit service charge (called "Interest" in this Contract) at the Annual Percentage Rate shown above. I promise to make payments on or before the payment due dates shown in the Payment Schedule above.

**CANANDAIGUA NATIONAL BANK & TRUST COMPANY**
72 S. Main Street, Canandaigua, New York 14424     (the "Assignee")

### REQUEST AND SCHEDULE OF GROUP INSURANCE

I understand that Group Credit Life Insurance and Group Credit Accident and Health Insurance are voluntary and are not required to obtain this loan. I further understand that I may select another insurer to provide this coverage.
If I choose to become insured, I understand that insurance will be provided in accordance with the certificate of group insurance that will be given to me. I also reserve the right to terminate my coverage at any time by notifying you in writing. The cost of insurance for the entire term of this loan are shown below.

| ☐ I WANT optional Group Credit Life Insurance. | $ N/A |
| ☐ WE WANT optional Group Credit Joint Life Insurance. | $ N/A |
| ☐ I WANT optional Group Accident and Health Insurance. | $ N/A |

Acct. No.
Date OCTOBER 13th, 2003

### Itemization of Amount Financed

| Cash Price | $ 9890.00 |
|---|---|
| Cash Downpayment | -$ 1800.00 |
| Trade-In |  |
| Value of Trade-In | -$ N/A |
| Lien Payoff to: | N/A |
|  | +$ N/A |
| Unpaid Cash Price Balance | |
| 1 =$ | 8090.00 |
| To Credit Insurance Company* | |
| 2 +$ | N/A |
| To _____ | |
| 3 +$ | N/A |
| To Public Officials | |
| 4 +$ | 63.00 |
| To VENDOR'S INSURANCE* | |
| 5 +$ | 45.00 |
| NY SALES TAX | |
| 6 +$ | 952.98 |
| NATIONAL AU /DOC FEE* | |
| 7 +$ | 1657.00 |
| Amount Financed | |
| (1 thru 7)=$ | 10807.98 |

**You may be retaining a portion of these amounts.

Insured Buyer's present age _____
Insured Co-Buyer's present age _____

Signature of Buyer _____      Signature of Co-Buyer (For Joint Life Only) _____
Insurer: _____      Max. Amt. of Ins.: N/A

Security Agreement: As security for this Contract (to protect you if I don't pay), I give you a security interest in the Vehicle being purchased. A security interest means that, if one of the events of default occurs, you can take the Vehicle and under certain circumstances sell it, as is more fully explained in the "Right to Demand Payment in Full" and the "Right to Repossess" sections on the back of this Contract. "Vehicle" shall include tires, equipment, replacement parts or additions to the Vehicle or any vehicle insurance refunds or any proceeds resulting from loss or damage to the Vehicle. If I default (see "Right to Demand Payment in Full" section), you have the right to apply any sums that I have on deposit with you and any group insurance refunds which you receive against any balance that I owe. The Vehicle also secures any advances made to protect your interest in the Vehicle.

*Exhibit B*